Filed 3/4/26  In re Meraz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re RAFAEL MERAZ<br><br>on<br><br>Habeas Corpus. | D085517<br><br>(San Diego County<br>Super. Ct. No. SCD233469) |

PROCEEDINGS in habeas corpus. Joan P. Weber, Judge. Relief granted with directions.

Nancy K. King, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Senior Assistant Attorney General, Eric A. Swenson, Supervising Deputy Attorney General and Felicity Senoski, Deputy Attorney General, for Respondent.

Rafael Meraz, who was 15 years old in 2007 when he committed a murder, contests a criminal court's order denying his petition for resentencing under Penal Code section 1172.6.[1]

Meraz contends that while his direct appeal was pending in this court, "California voters passed Proposition 57 on November 8, 2016. This amendment to the Welfare and Institutions Code eliminated direct filing in criminal court by prosecutors, allowing for young defendants like [him] to be tried as an adult only after a finding of unfitness in juvenile court. The law took effect on November 9, 2016, and because his case was not final at that time, the provisions of Proposition 57 applied to [him] and he should have been remanded to juvenile court for a fitness hearing at that time." He argues that prior to the finalization of his judgment, he was constitutionally deprived of the effective assistance of counsel, who did not raise this issue in 2016.

In Meraz's attorney's declaration accompanying the writ petition, she states: "When Proposition 57 was passed and became effective the following week, I was not aware of its application to this case, and I did not file any additional briefing or ask for remand to the juvenile court." She also points out she represented Meraz in a second appeal but did not raise the issue. She concludes: "If I had been aware that Proposition 57 had a possible ameliorative effect that retroactively applied to petitioner's case, I would have filed a supplemental brief and/or a petition for rehearing in late 2016, and if the case had not been remanded at that time I would have filed a

_____

[1] On our own motion, we take judicial notice of the appellate record in *People v. Meraz* (D083575). Undesignated statutory references are to the Penal Code.

petition for review. Further, if I had been aware of the existence of the claims made here when I represented Meraz in 2021 . . . I would have pursued this remedy at that time. I had no tactical reason for failing to do so."

Meraz's sole contention in the accompanying appeal filed in D083575 is that the court erroneously denied his petition for a remand of his case to the juvenile court under the ameliorative provisions of Proposition 57 and Senate Bill No. 1391. He argues these laws, which generally eliminated prosecutors' ability to seek transfer of 14 and 15 year olds from juvenile court to criminal court, applied retroactively to him.

In December 2025, we issued an order to show cause why relief should not be granted. Because no party objected, the informal response and reply to the petition were deemed the return and traverse. We then ordered this writ to be considered with the appeal, and conclude the writ has merit. Accordingly, we grant the petition and remand the matter with directions set forth below. By separate order, we dismiss the appeal as moot.

FACTUAL AND PROCEDURAL BACKGROUND

The facts of Meraz's offenses are set forth in our prior unpublished opinion, which addressed contentions raised by Meraz and a codefendant, Michael Jay Aguon. (*People v. Aguon et al.* (Nov. 29, 2016, D064367) [nonpub. opn.].) We summarize them here.

On October 21, 2007, a group of people were in front of an elementary school when Meraz rode up on a bicycle, throwing gang hand signs as he approached. He used a derogatory term for a rival gang. He identified his gang. He appeared to be either drunk or under the influence of a controlled substance. He left, but returned shortly afterwards and said something about blasting them. He revealed a gun in his waistband. Then he rode

away. About an hour and a half later, Meraz returned and a member of the group confronted him, asking him why he was disrespecting them. Meraz explained this was his gang's territory, and again revealed his gun. When he started to advance on the person who confronted him, another male from the group punched Meraz in the face, knocking him to the concrete. Meraz pulled his gun out. Someone eventually pried the gun from Meraz's hands and detained him. The police arrived and took him to the hospital, where he tested at a 0.13 percent blood alcohol level. He had scalp lacerations that required staples to close, and a fractured thumb. Police recovered the gun, which was loaded with 11 rounds.

Ten days later, one of the men who had confronted Meraz was fatally shot in the same area of the previous altercation, after returning from trick-or-treating with his daughter. Just before the shooting, one of the three assailants said, "What's up now." The shooter was wearing a black hooded sweatshirt, with a bandana covering his face, and the other two wore Halloween masks. All the bullets recovered at the scene were fired from the same gun.

In 2012, a jury convicted Meraz of first degree murder (§ 187, subd. (a)), and found that Meraz was a principal, and that a principal in the murder personally used a firearm, and proximately caused great bodily injury, within the meaning of section 12022.53, subdivisions (d) and (e)(1). The court sentenced Meraz to an indeterminate term of 50 years to life in prison.

Meraz appealed, and we affirmed his conviction. Meraz appealed to the California Supreme Court, which granted review and held the case. Subsequently, it transferred the matter to this court with directions to vacate our opinion and reconsider the case in light of *People v Franklin* (2016) 63 Cal.4th 261 (*Franklin*). On November 29, 2016, we remanded the matter to

the criminal court to conduct a *Franklin* hearing and to correct the abstract of judgment.

In 2020, Meraz petitioned for resentencing under section 1170.95, which the criminal court denied without issuing an order to show cause. Meraz appealed, and we affirmed the order. Meraz filed a petition for rehearing, which we granted. We reversed the superior court's order summarily denying Meraz's petition and remanded the matter with instructions for the criminal court to hold an evidentiary hearing. (*People v. Meraz* (April 27, 2022, D078422) [nonpub. opn.].)

Before the evidentiary hearing took place, Meraz moved to remand the matter to the juvenile court for adjudication of the petition under Senate Bill No. 1391. The criminal court denied the motion.

Following the evidentiary hearing, the criminal court again denied Meraz's section 1172.6 petition.

This petition and related appeal ensued.

DISCUSSION

Meraz contends, and the People concede, the judgment in Case No. D064367 on direct appeal was not yet final when Proposition 57 took effect on November 9, 2016. He provides this chronology: "[He] was sentenced on July 26, 2013. This Court affirmed the judgment . . . on March 30, 2015, and the Supreme Court granted review. The case was transferred back to this Court for reconsideration on August 17, 2016, and the final decision was filed on November 29, 2016, not quite three weeks after Proposition 57 took effect." He adds that because appellate counsel provided ineffective assistance by failing to "preserve his right to disposition in the juvenile court with supplemental briefing, a petition for rehearing, or a petition for review[,]" his case became final 30 days after finality in this court, on January 30, 2017,

5

when the California Supreme Court's time to order review on its own motion expired under California Rules of Court, rule 8.512(c)(1). Meraz therefore requests we remand the matter to the juvenile court, where he will be entitled to the ameliorative benefit of Senate Bill No. 1391, which amended Welfare and Institutions Code section 707.[2]

The California Supreme Court summarized Proposition 57's ameliorative effect and concluded it applied retroactively: " 'Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing [of criminal charges against a juvenile] by prosecutors. Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated.' " (*People v. Superior Ct.* (*Lara*) (2018) 4 Cal.5th 299, 305-306 (*Lara*).) "[T]he potential benefit of a juvenile transfer hearing is that it may, in fact, dramatically alter a minor's effective sentence or 'juvenile disposition' for past criminal conduct. Thus, . . . we infer that the electorate intended the

_____

[2]     Welfare and Institutions Code section 707 subdivision (a)(2), which governs fitness hearings for minors accused of certain felonies, including murder, states: "In any case in which an individual is alleged to be a person described in [Welfare and Institutions Code s]ection 602 by reason of the violation, when the individual was 14 or 15 years of age, of any offense listed in subdivision (b), but was not apprehended prior to the end of juvenile court jurisdiction, the district attorney or other appropriate prosecuting officer may make a motion to transfer the individual from juvenile court to a court of criminal jurisdiction. The motion shall be made prior to the attachment of jeopardy. Upon the motion, the juvenile court shall order the probation officer to submit a report on the behavioral patterns and social history of the individual. The report shall include any written or oral statement offered by the victim[.]"

6

possible ameliorating benefits of Proposition 57 to apply to every minor to whom it may constitutionally apply." (*Id.* at p. 311.)

In *People v. Padilla* (2022) 13 Cal.5th 152, the California Supreme Court held Proposition 57 applied during resentencing when a criminal court sentence imposed on a juvenile offender before the initiative's passage had since been vacated. The defendant was originally sentenced before Proposition 57 was enacted, but his judgment later became nonfinal when his sentence was vacated on habeas corpus and the case was returned to the trial court for imposition of a new sentence. (*Id.* at p. 158.)

The high court recognized the complex consequences that might result from a transfer to juvenile court years after defendants who were then juveniles committed their crimes: "Under *Lara, supra,* [4 Cal.5th 299], such defendants must receive a transfer hearing; their sentence will be reinstated if the court finds criminal adjudication appropriate, or else their convictions will be ' "treat[ed] . . . as juvenile adjudications." ' [Citation.] For a defendant over the age of 25, a juvenile court generally will not be able to retain continuing jurisdiction if it finds juvenile adjudication proper. (Welf. & Inst. Code, § 607, subds. (c), (h)(2).) We made clear in *Lara* that the complexity and possible outcomes of this remedial approach are 'no reason to deny the [transfer] hearing.' " (*People v. Padilla, supra,* 13 Cal.5th at p. 168.) The court cautioned, "Whatever potential that hearing may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt." (*Id.* at pp. 169-170.)

To establish constitutionally inadequate representation, the defendant must show that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) We defer to trial counsel's reasonable tactical decisions in

examining a claim of ineffective assistance of counsel. (*People v. Weaver* (2001) 26 Cal.4th 876, 925.) "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Gray* (2005) 37 Cal.4th 168, 207.)

The People concede the correctness of Meraz's timeline, but contend he cannot still obtain review of the criminal court's imposed sentence because he did not raise the Proposition 57 issue on direct appeal: "This court affirmed appellant's conviction with a limited remand on November 29, 2016. (*People v. Aguon, et al.*[*, supra,* D064367].) The remittitur issued on February 2, 2017. Although Proposition 57 became effective in November 2016, it was not raised during the pendency of appellant's direct appeal." However, Meraz's counsel's declaration stating she had no tactical reason for failing to raise the matter on direct appeal demonstrates constitutional ineffective assistance of counsel under the standard set forth above. And Meraz was prejudiced by the failure to raise the Proposition 57 issue earlier, because it provides ameliorative benefits, as set forth in *Lara, supra,* 4 Cal.5th at pages 305-306 and *Padilla, supra,* 13 Cal.5th at page 158 that would have been available to him because his case was not final when Proposition 57 went into effect. Accordingly, we grant relief, remand for the criminal court to conditionally reverse its sentence, and remand the matter to the juvenile court for proceedings under Welfare and Institutions Code section 707.

DISPOSITION

The relief requested in the petition is granted. The judgment of the criminal court is conditionally reversed. The cause is remanded to the juvenile court with directions to conduct a transfer hearing no later than 90 days from the filing of the remittitur. If, at the transfer hearing, the juvenile court determines that it would have transferred Meraz to a court of criminal jurisdiction, then the convictions shall be reinstated as of that date. If, at the transfer hearing, the juvenile court determines that it would not have transferred Meraz to a court of criminal jurisdiction, then his criminal convictions and enhancements will be deemed to be juvenile adjudications as of that date. The juvenile court is then to conduct a dispositional hearing within its usual timeframe.

O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


KELETY, J.

9